THE NEW YORK & NEW ENGLAND RAILROAD COMPANY *vs.*
THE CITY OF PROVIDENCE *et al.*

Under acts of the General Assembly of A. D. 1845 and 1848, the city council of Providence
consented to the location and construction of a railroad, and the erection of buildings for
railroad purposes, within the city, on condition that the railroad company filled certain
tide flowed lands within a specified time. This filling was not wholly done by the com-
pany, and was completed by the city after the time had expired.

*Held*, that the New York and New England R. R. Co., successor to the said railroad com-
pany, had no claim to such land as was not filled in by the company, but was afterwards
filled in by the city.

The act of the city was not a grant, but gave a conditional permission to occupy if the filling
was done within the time limited.

Poverty on the part of the company could not abrogate the condition of filling.

The city exacted a deposit of bonds as security for the performance of the condition, and
retained the deposit.

*Held*, that the deposit was wrongfully exacted and detained.

BILL IN EQUITY brought by the complainant in aid of its ac-
tions of trespass and ejectment against the City of Providence
and the Providence and Springfield Railroad Company.

*March* 1, 1890. STINESS, J. The General Assembly, by acts
passed in 1845 and 1848, gave authority to the city council of
Providence to grant, upon such terms as they might deem for the
public. good, to any railroad company having a terminus at said
city, the right and privilege of establishing a depot upon any part
of the land covered by the public waters in said city above Wey-
bosset Bridge ; of constructing such causeways, embankments, etc.,
as might be necessary to accommodate buildings, and of laying
rails, turnouts, and spur tracks over the public lands and waters,
subject to the approval of the city council.

February 9, 1852, upon the petition of the Hartford, Providence,
and Fishkill Railroad Company, to which company the complain-
ant is successor, the city council of Providence passed the resolu-
tions appended as Exhibit A, to the bill. These resolutions, as
amended and reënacted, March 29, 1852, Exhibit B, are the foun-
dation of the complainant's claim of title to the land in question ;
the claim being that they constitute a grant of the tide-flowed
land therein described, for railroad purposes, upon condition that
it should be filled by the company.

It is to be observed that these resolutions do not purport to

make such a grant. On the contrary, the city council simply consented to the location and construction of the railroad in the city, upon condition that the company would fill a certain defined area of the Cove lands within a certain limited time. The reclamation of the land was not a privilege granted, but a condition exacted, upon which the consent of the city to the location of the road was made to depend. A provision followed, the 6th, which authorized the company to construct depots, engine houses, and other buildings for railroad purposes only, on land so to be filled, south of a proposed street. This provision is the only one which gives the railroad company any right whatever upon this land outside of its location. It was also provided that the resolutions should be null and void if the filling was not completed before January 1, 1857. The filling was not completed at that time. The question now is, whether the complainant, as successor to the Hartford, Providence, and Fishkill Railroad Company, has an equitable right to land which the latter company failed to fill, but which was subsequently filled by the city; no question being made by the respondents as to the complainant's title to the land actually filled prior to January 1, 1857. It is not very clear from the testimony how far this filling extended, but our conclusion is, that it was substantially as shown on respondent's Exhibits V. and VI., since these plats were made nearest the time of the work, and before it was possible to confuse the line with that of work done by the city afterwards. The opinions of witnesses, after so long a time and without landmarks to guide them, that the line of filling was about as shown on Exhibit II., is too indefinite to satisfy us that it is the true line. The line as claimed by the respondent is corroborated by the building of the fence substantially in agreement with it, *i. e.* along the straight bank and stopping short at Gaspee Street; and also by the occupation of the land on the north side for many years. The adoption of this line in this case leaves a small piece of land north of that occupied by the complainant, which, consequently, is not embraced in this decision.

As we have seen from the resolutions, under which the complainants claim, no title was granted, but only an easement or permission to occupy the land, if it should be filled within the time limited. It is not, then, a question of forfeiture of title for breach

of condition; for, in so far as the filling is a condition subsequent, it applies, not to a grant of land, but to consent to the location and construction of the road.   Under the charter of the Providence and Plainfield Railroad Company, granted June, 1846, the railroad company had no authority to lay out or construct its road in the city of Providence, except with the consent of the city council and upon such terms as the council might impose.   The city council, in dealing with its successor, the Hartford, Providence, and Fishkill Railroad Company, acted under this provision of the charter, instead of making a grant under authority of the statute, as was done with the Providence and Worcester Company, where such authority was expressly recited.   The parties may have supposed that the resolutions amounted to a grant, but in terms they only attached conditions to the layout of the road in Providence. We cannot enforce a grant where none was made, nor assume an act to have been done under one authority which was clearly done under another.   In respect to the layout, the conditions were conditions subsequent; but in respect to use of the land the condition of filling was precedent, since the right to occupy was made to depend upon the completion of the filling within the time named, and no such right was to be acquired unless and until that should be done.   It is therefore a sufficient and conclusive answer to the complainant's claim of right to land not so filled that the condition was not performed.   But the complainant sets up the action of the city by way of equitable excuse for non-performance of the condition.   In March, 1853, the contract in regard to the retaining wall was modified, so that the railroad company should be released from building it, by paying to the city its estimated cost, which was to be expended by the city in building a wall along the channel of the river.   The city received the money, but did not build the wall until long after 1857.   The complainant claims that this neglect of the city made it impossible, or at least impracticable, to complete the filling; because, without the wall, it would have been washed away.   Some testimony was put in on this point. We think opinions to the effect that the work could not be done are overborne by the facts that the larger part of the stipulated filling was done before the wall was built, without washing away; and that, in the winter of 1857–1858, the balance of the land was

filled by the city with equally good result. The land filled by the company was a long way from the channel of the river and washed only by the tides. It seems to have stood as any bank, at the head of tide waters, away from the current, might be expected to stand, and it sustained the tracks and buildings put upon it. We see no reason why the additional filling would not have stood as well, and do not think that the company was prevented from performing its agreement by the failure of the city to build the wall.

It is also urged that the financial embarrassment of the Hartford, Providence, and Fishkill Company, in 1856 and 1857, is an equitable excuse for not completing the filling. We know of no authority, nor are we shown any, by which a court can abrogate a part of a contract or condition, merely because the party who is to perform it is financially embarrassed. But, if this were so, it is hard to see how we could grant relief upon this ground, since no such claim was made at the time, no notice of the fact given to the city, and, so far as appears, no attempt made to go on with the work after 1855, when the company had filled enough for present and prospective needs. Instead of showing any effort or desire to do more than was done, or any failure to do more from the cause now urged in excuse, the somewhat inconsistent positions are taken that the contract was substantially completed, and also that the company was prevented from completing it by the failure of the city to build the retaining wall. What was done served the needs of the company for thirty years, and, as such things go, we think it would be no harsh inference to assume that the company stopped because it then had in occupation all it would be likely to want, rather than because of financial embarrassment, when it does not appear that the company tried to do more. Whether filling the land would have benefited the city or State at that time we need not inquire, since it was the condition agreed upon, by which the complainant must be bound, unless in some way excused from performance. The mere fact that a condition agreed upon is not beneficial to the party who exacts it does not excuse its performance. It is enough for this case that it was considered of sufficient importance to warrant the city in filling the land immediately after the time of the railroad company had expired.

But it is claimed that equity will relieve without an excuse, be-

cause the city can be compensated for the expense of filling, which the complainant offers to pay.  We fail to see how, after a default of thirty years, we can reinstate a right to occupy land upon a money payment when the right originally depended upon something different, and thus oust the city and its tenants of possession and improvements.  The city has been in no default; the bill admits it has a legal title to the land in controversy.  It would, therefore, be a curious operation of equity which would deprive the city of its title, for no fault of its own, simply on compensation for the default of the complainant's predecessor.

It is also claimed that the city has waived the condition.  The bill is framed upon the theory that a grant of title, upon condition subsequent, was made to the Hartford, Providence, and Fishkill Company; that there has been no entry for breach of condition; no claim of an entire forfeiture; hence the condition was waived as to all the land.  All this part of the case falls when we find there has been no grant, to defeat which an entry was necessary.  There has been no express waiver.  On the contrary, the city all along demanded performance of the condition within the time named, even exacting in September, 1855, and since retaining, a pledge of $6,000 in mortgage bonds as security therefor.  The surrender of these bonds is claimed by the complainant, and in our opinion rightly.  Such a pledge was no part of the original condition; nor was it provided for in the contract relating to the bonds.  The city had no authority then to require it, and no right now to retain it.

The main purpose of the bill is in aid of actions of trespass and ejectment brought by the complainant; but since it has no right of possession to a portion of the land, and the right to occupy the remainder is limited to a use for railroad purposes only, subject to approval on the part of the city, which approval has not yet been obtained, the complainant has not shown itself to be entitled to maintain trespass and ejectment for any part of the land sued for, and therefore not entitled to relief on this ground.

*Simeon E. Baldwin & Frank S. Arnold*, for complainant.

*Nicholas Van Slyck*, City Solicitor, and *Cyrus M. Van Slyck*, for respondent the City of Providence.

*James M. Ripley*, for respondent the Providence and Springfield R. R. Co.